# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | | |
|---|---|---|
| STATE OF TENNESSEE, by and through the Tennessee General Assembly, TENNESSEE GENERAL ASSEMBLY, SENATOR JOHN STEVENS, individually and in his official capacity as Member of the Tennessee Senate for the 24th Senatorial District, and REPRESENTATIVE TERRI LYNN WEAVER, individually and in her official capacity as Member of the Tennessee House of Representatives for the 40th House District, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. _____ |
| UNITED STATES DEPARTMENT OF STATE, REX TILLERSON, in his official capacity as United States Secretary of State, BUREAU OF POPULATION, REFUGEES, AND MIGRATION, SIMON HENSHAW, in his official capacity as Acting Assistant Secretary of State for Population, Refugees, and Migration, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, THOMAS E. PRICE, in his official capacity as Secretary of Health Health and Human Services,  OFFICE OF REFUGEE RESETTLEMENT, KEN TOTA, in his official capacity as Acting Director of the Office of Refugee Resettlement, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR DECLARATORY
## AND INJUNCTIVE RELIEF

Plaintiffs the State of Tennessee, by and through the General Assembly, the General Assembly of the State of Tennessee, Senator John Stevens, individually and in his official capacity as Member of the Tennessee Senate for the 24th Senatorial District, and Representative Terri Lynn Weaver, individually and in her official capacity as Member of the Tennessee House of Representative for the 40th House District, hereby bring this complaint for declaratory and injunctive relief against the above-named defendants and in support thereof would respectfully show this Court as follows:

## INTRODUCTION

1. This case seeks to protect and vindicate the fundamental constitutional status of the State of Tennessee as a sovereign entity not subject to unconstitutional coercion and commandeering by the federal government.

2. When the federal government exceeds its constitutional limits, courts are empowered to enjoin the federal government's overreach.

3. Here, the federal government has violated both the United States Constitution's Spending Clause and the Tenth Amendment by enacting and implementing 8 U.S.C. §§ 1612 and 1522(e)(7) as well as 45 C.F.R. § 400.301. These provisions purport to grant the federal government the authority to commandeer state funds to finance a federal program, namely, the resettlement of refugees within the United States pursuant to the U.S. Refugee Admissions Program.

4. Therefore, Plaintiffs respectfully request that this Court declare that the federal government has impermissibly intruded on Tennessee's state sovereignty and order the federal government to abide by the restraints imposed by the United States Constitution.

5. This suit is not intended to inflict harm on immigrants or refugees from any nation. Rather, this is a suit that seeks to preserve the constitutional relationship between the federal government and the states as mandated by our nation's founders.

## THE PARTIES

6. Plaintiff the State of Tennessee is the sixteenth state of the United States of America, having been admitted to the Union on June 1, 1796, and brings this suit by and through its General Assembly. A state has standing to sue the United States when the federal government deprives it of its status as a sovereign entity within our federal system or otherwise exceeds the limits set by the United States Constitution. As described more fully in the remainder of this complaint, Defendants have exceeded and, absent relief from this Court, will continue to exceed the powers granted to the federal government under the Spending Clause of the United States Constitution as well as the limits imposed upon the federal government by the Tenth Amendment, thereby infringing upon the constitutionally-protected sovereignty and powers of the State of Tennessee. The Tennessee General Assembly has standing to bring this action on behalf of the State of Tennessee pursuant to Tennessee Senate Joint Resolution 467 and the July 5, 2016 letter concerning said resolution authored by Tennessee Attorney General Herbert H. Slatery, III specifically delegating his constitutional and statutory authority to the General Assembly to commence litigation on behalf of the State of Tennessee and the General Assembly for the purpose of pursuing litigation challenging the constitutionality of the federal government's refugee resettlement program and other issues raised by SJR 467.

7. Plaintiff the General Assembly of the State of Tennessee is vested by the Tennessee Constitution with the state's legislative powers and is responsible for, among other things, appropriating state funds and enacting the state's annual budget. *See, e.g.*, Tenn. Const.

art. II, § 24.  As a result of the actions of Defendants described herein, the General Assembly has been deprived and, absent relief from this Court, will continue to be deprived of the ability to spend state funds in the manner the people of Tennessee may—through their elected legislators—deem most appropriate.  More specifically, even though the state has duly withdrawn from the federal government's refugee resettlement program, Defendants threaten to deprive the state of unrelated federal funding and are thereby unconstitutionally coercing the state into subsidizing the federal government's refugee resettlement program.

8.     Plaintiff Senator John Stevens is the duly elected member of the Tennessee Senate for the 24th Senatorial District.  Senator Stevens is First Vice-Chair of the Senate's Standing Committee on Finance, Ways and Means.  Along with other matters, this committee is responsible for all measures relating to taxes and the raising of revenue, all measures dealing with the appropriation of state funds, general appropriations bills, and oversight of public monies in the state's treasury.  Moreover, Senator Stevens is Chairman of the Appropriations Subcommittee of the Senate's Finance, Ways and Means Committee.  This subcommittee decides which issues will be considered by the Finance, Ways and Means Committee.  Senator Stevens resides in Carroll County, Tennessee, and his senatorial district includes Benton, Carroll, Gibson, Henry, Obion, and Weakley counties.  The actions of the federal government that give rise to this case impede and interfere with Senator Stevens's ability to fully discharge his duties as a member of the Tennessee General Assembly and as a leader on the Senate Standing Committee on Finance, Ways and Means.

9.     Plaintiff Representative Terri Lynn Weaver is the duly elected member of the Tennessee House of Representatives for the 40th House District. Representative Weaver is Chairman of the House Transportation Subcommittee, which is charged with oversight of budget

numbers related to transportation, and serves on the House Education Administration & Planning Committee. Representative Weaver resides in Smith County, Tennessee, and her house district includes Smith, DeKalb, Trousdale, and Sumner counties. The actions of the federal government that give rise to this case impede and interfere with Representative Weaver's ability to fully discharge her duties as a member of the Tennessee General Assembly and as a leader and member of the committees on which she serves.

10. Defendant United States Department of State is a federal agency that administers the domestic refugee admissions program at issue in this case and that relies on state funds to implement said program.

11. Defendant Rex Tillerson is the United States Secretary of State and in that capacity is accountable for the division within the United States State Department that administers the domestic refugee admissions program.

12. Defendant Bureau of Population, Refugees, and Migration ("PRM") is a federal agency within the U.S. State Department and has primary responsibility for formulating domestic policies regarding refugee resettlement and determining the domestic placement of refugees.

13. Defendant Simon Henshaw is Acting Assistant Secretary of State for PRM and, in that capacity, has responsibility for formulating and proposing domestic policies regarding refugee resettlement and determining the domestic placement of refugees.

14. Defendant United States Department of Health and Human Services ("HHS") is a federal agency responsible for a variety of programs for eligible refugees through its Office of Refugee Resettlement. HHS provides partial support to refugee resettlement agencies and, through federal regulations, mandates that states, like Tennessee, provide additional funding for refugee resettlement needs.

15. Defendant Thomas E. Price is Secretary of the United States Department of Health and Human Services and in that capacity is accountable for the division within HHS that mandates state funding of refugee resettlement.

16. Defendant Office of Refugee Resettlement ("ORR") is a federal agency within HHS that facilitates the domestic placement of refugees within the State of Tennessee, as well as other locations in the United States, and orders local refugee resettlement offices to make referrals and assist in enrolling arriving refugees into the State of Tennessee's Medicaid program, thereby shifting the funding of refugee medical costs to the state (instead of using federal funds that are available in a refugee medical assistance subsidy program).

17. Ken Tota is Acting Director of ORR and in that capacity facilitates the placement of refugees within the State of Tennessee and orders local refugee offices to make referrals and and assist in enrolling incoming refugees into the State of Tennessee's Medicaid program, thereby shifting the funding of refugee medical costs to the state.

## JURISDICTION AND VENUE

18. This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1346.

19. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

20. Venue is properly laid in this Court under 28 U.S.C. § 1391(e)(1)(B) because a substantial part of the events giving rise to these claims occurred in the Western District of Tennessee and pursuant to 28 U.S.C. § 1391(e)(1)(C) on the basis of plaintiff party residency. Additionally, due to the location of certain events giving rise to these claims and plaintiff party

residency, venue is proper in this Court's Eastern Division under Western District Local Civil Rule 3.3(b).

## FACTUAL BACKGROUND

21. In 1980, Congress enacted the Refugee Resettlement Act ("Act"), 8 U.S.C. § 1521 *et seq.* Since the program's inception, proponents, supporters, and even drafters of the Act have recognized the significant financial impact the resettlement of refugees imposes on state budgets.

22. Senator Ted Kennedy, the leading sponsor of the Act, emphasized that the purpose for revamping refugee resettlement law was "to assure full and adequate *federal* support for refugee resettlement programs by authorizing permanent funding for state, local and volunteer agency projects." Edward M. Kennedy, *Refugee Act of 1980*, 15 Int'l Migration Rev., no. 1/2, Spring-Summer 1981 at 141, 142 (emphasis added).

23. The United States House and Senate both recognized that, "[b]ecause the admission of refugees is a federal decision and lies outside normal immigration procedures, the federal government has a clear responsibility to assist communities in resettling refugees and helping them to become self-supporting." *Id.* at 151.

24. Congress thus crafted the Act with the intention that "[s]tate and local agencies . . . not be taxed for programs they did not initiate *and for which they were not responsible*" and instead that the federal government alone should be "responsible" for funding its own program. *Id.* (emphasis added).

25. During debate leading up to passage of the Act, Senator Kennedy outlined three categories of assistance—cash, medical, and social services—explaining that "[t]hese three types of Federal assistance are provided through a 100-percent reimbursement to the States for all

refugees who do not qualify for the regular AFDC-Medicaid programs. For those who do qualify for the regular programs, the funds cover the State's portion of payment for these services." 125 Cong. Rec. 23234 (Sept. 6, 1979).

26. The Act, as passed by Congress, authorized thirty-six (36) months of full reimbursement to a state for the cost of each refugee resettled and participating in certain benefit programs. States received a 100% reimbursement of their costs under the Aid to Families with Dependent Children and Medicaid programs with respect to each participating refugee. Additionally, the federal government provided separate financial assistance for refugees not eligible for benefits under these programs.

27. Federal funds initially supported the federal government's refugee resettlement program, but eventually federal reimbursements to the states were reduced and, by 1991, eliminated entirely. States thereby became responsible for costs of the program.

28. Reports to Congress from the United States Government Accountability Office and ORR have acknowledged that costs of the federal refugee resettlement program have been transferred from the federal government to the states.

29. Upon information and belief, in 2015, the State of Tennessee spent over $31 million state dollars to support the federal refugee resettlement program through TennCare.

30. Furthermore, to avoid spending federal funds set aside for refugee medical assistance and to shift more of the program costs onto the states, federal regulations mandate that state refugee resettlement offices first determine if a refugee is eligible for Medicaid. Consequently, states, like Tennessee, are forced to pay a significant portion of these costs from state tax dollars. 45 C.F.R. § 400.94. It is only after the refugee resettlement agency determines that a refugee is not eligible for Medicaid under the State plans that the agencies determine

eligibility for the fully federally funded Refugee Medical Assistance ("RMA") program. 45 C.F.R. § 400.94(d).

31. Though some states still voluntarily participate in the refugee resettlement program to place refugees, a growing number of states are exercising their right under the relevant regulations to withdraw from the refugee resettlement program.

32. At one time, the State of Tennessee voluntarily participated in the refugee resettlement program.  In 2007, however, due to mounting program costs that were not covered by the federal government, Tennessee elected to withdraw from the program pursuant to 45 C.F.R. § 400.301.  Accordingly, by letter dated October 29, 2007, the State of Tennessee notified ORR of its intent to withdraw from the refugee resettlement program effective June 30, 2008.

33. Despite Tennessee notifying the federal government that it declined to further implement, fund, or participate in the federal refugee resettlement program, the federal government—through various regulations and statutes—coerced the state to continue funding the refugee resettlement program by threatening the state with the loss of federal Medicaid funding. Furthermore, in direct violation of constitutional principles of state sovereignty, the federal government bypassed the decision of Tennessee's elected representatives and mobilized a private agency to assume control and direction of the refugee resettlement program in Tennessee.  As a result, the federal government nullified the decision of the people of Tennessee to withdraw from an ostensibly voluntary federal program and thereby commandeered state funds to support a federal initiative.

34. In Tennessee, the Medicaid program, known as TennCare, is jointly funded by Tennessee and the federal government.

35. In 2016, the federal contribution to TennCare amounted to nearly $7 billion (estimated $6,858,799,000.00), which represented approximately 20% of Tennessee's total overall budget for the fiscal year. From 2008, when Tennessee withdrew from the refugee resettlement program, until 2016, the federal contribution to Medicaid ranged from over $4 billion ($4,566,651,300.00) to nearly $7 billion and has represented 17% to 21% of Tennessee's budget. During that same time, the federal government has resettled more than 13,000 refugees within Tennessee.

36. Under 8 U.S.C. §§ 1612 and 1641, the State of Tennessee is mandated to provide TennCare to help fund the refugee program or risk losing the federal contribution to TennCare.

37. Unlike the vast majority of immigrants, those individuals deemed "refugees" under federal law may apply for Medicaid programs immediately upon arrival to the United States. Thus, when a refugee enrolls in Medicaid, the federal government shifts a substantial part of the costs of the federal refugee resettlement program onto the states, including those states (like Tennessee) that have withdrawn from further voluntary participation in the program.

38. Instead of honoring Tennessee's decision to withdraw from further participation in the federal refugee resettlement program, the federal government bypassed the state government and appointed a private organization, Catholic Charities of Tennessee, to continue the program—even though federal regulations specifically permitted ORR to discontinue resettlement of refugees in Tennessee rather than continue resettlement through use of a private designee.

39. Catholic Charities of Tennessee subsequently established an entity referred to as the Tennessee Office for Refugees ("TOR") whose primary purpose was and is to replace the

state and continue the federal refugee resettlement program in Tennessee, notwithstanding the state's desire to withdraw from the program.

40. TOR is federally contracted to disburse federal funds to local resettlement offices in Tennessee, monitor the resettlement of refugees by local resettlement agencies operating in the state, and establish policies and procedures for the local resettlement agencies consistent with directives from ORR.

41. According to TOR's *State of Tennessee Refugee Services Plan and Refugee Program Policy and Procedures Manual*, an "eight month subsidy" for federal refugee medical assistance is only available to refugees ineligible for or denied enrollment into TennCare. As a result, the State of Tennessee is forced to expend substantial amounts of state taxpayer money to fund the resettlement program, even though Tennessee has ostensibly withdrawn from the program.

42. If Tennessee refuses to expend state funds to provide these refugee services through Medicaid, the state is subject to a loss of nearly $7 billion, representing 20% of its total state budget, under 42 U.S.C. § 1396c.

43. The United States Supreme Court has held that "[t]he threatened loss of over 10 percent of a State's overall budget . . . is economic dragooning that leaves the States with no real option," and therefore exceeds the constitutional bounds of Congress's power under the Constitution's Spending Clause. *NFIB v. Sebelius*, 132 S. Ct. 2566, 2605 (2012).

44. Here, operation of the federal refugee resettlement program commandeers Tennessee's funds through Medicaid with the threatened loss of nearly $7 billion, amounting to 20% of its overall state budget—money that is needed to fund services that are critical to the health and welfare of countless Tennesseans.

45. The conditions set by the federal government that compel the State of Tennessee to permit individuals in the refugee resettlement program access to Medicaid are not germane to the operation or functioning of the state's Medicaid program as a whole.

46. The effect of the federal government's actions is to deprive Tennessee of its sovereignty and regulate it in its sovereign capacity.

47. The refugee resettlement program also commandeers other state funds and instrumentalities through health and welfare programs and public schooling, including the program known as "English Language Learners," as mandated by 20 U.S.C. § 1703.

48. The federal government therefore carries out its refugee resettlement program through economic dragooning of state funds and instrumentalities, which is impermissible under the Tenth Amendment to the United States Constitution and in excess of the federal government's powers under the Constitution's Spending Clause.

## COUNT I:
### Violation of the Spending Clause and Tenth Amendment

49. The allegations of paragraphs 1 through 48 are re-alleged and incorporated herein by reference.

50. The United States Constitution does not confer upon the federal government the power to direct expenditure of state funds to support a federal program and, moreover, prevents the federal government from regulating a state in its sovereign capacity.

51. The federal government is prohibited from using its power under the Spending Clause, U.S. Const., art I, § 8, cl. 1, to coerce states into supporting federal programs with state moneys.

52. While the federal government may offer incentives to states, conditions on spending that threaten a state with the loss of significant federal funds must not be so coercive as to amount to unconstitutional compulsion.

53. When the federal government threatens the loss of the federal contribution to Medicaid, or "over 10 percent of a state's overall budget," such action violates the Tenth Amendment to the United States Constitution and is not supported by the Spending Clause.

54. Here, Plaintiffs are threatened under 42 U.S.C. § 1396c with the loss of nearly $7 billion, amounting to 20% of Tennessee's overall state budget, unless the State of Tennessee continues to support the federal refugee resettlement program by funding healthcare for refugees enrolled in TennCare, its state Medicaid program.

55. Plaintiffs are also forced to support the federal refugee resettlement program by expending funds and making available state instrumentalities through other programs, such as public schooling and English Language Learner services.

56. The actions described above unconstitutionally deprive the State of Tennessee of its sovereignty and regulate the state's actions as a sovereign.

57. The state funds commandeered to support the federal government's refugee resettlement program deprive Plaintiffs of scarce financial resources that are critical for protecting the welfare, health, and safety of all Tennesseans.

58. Additionally, because the State of Tennessee is not consulted or informed of the number of refugees that will be resettled within its borders, the state is left without vital information to properly budget and appropriate its funds.

59. Accordingly, in order to ensure that states are in fact "independent and sovereign bodies" it is proper to enter judgment declaring that the federal government's actions are in

violation of the Tenth Amendment in that they coerce the State of Tennessee to support a federal program with state moneys and instrumentalities and declaring further that such actions exceed the powers of the federal government under the Constitution's Spending Clause.

60. An actual controversy exists between the parties about the legality of the federal government's actions as described in this complaint.

61. A declaratory judgment is necessary and appropriate as it would serve a useful purpose in clarifying and settling the legal issues between the parties and thereby afford relief from the uncertainty and controversy giving rise to this proceeding.

62. Plaintiffs will suffer significant and irreparable harm unless this Court intervenes.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court award the following relief:

1. That a declaratory judgment be entered pursuant to 28 U.S.C. § 2201 *et seq.* declaring that Defendants have exceeded the federal government's powers under the Spending Clause and violated the Tenth Amendment;

2. That Defendants be preliminarily and permanently enjoined from resettling additional refugees within the State of Tennessee unless and until the United States government pays for such resettlement and absorbs all costs for the resettlement program that are currently being incurred by the State of Tennessee;

3. That further preliminary and permanent injunctive relief be granted (a) compelling Defendants to comply with the Spending Clause and the Tenth Amendment with respect to refugee resettlement; and (b) compelling the United States government to fund refugee resettlement from federal dollars and without any involuntary contribution from the State of Tennessee;

4. That Plaintiffs recover their costs and attorneys' fees, as allowed by law; and

5. That Plaintiffs receive such other and further relief as this Court may deem just and proper.

Respectfully submitted, this the 13th day of March, 2017.

          THOMAS MORE LAW CENTER

          /s/Richard Thompson
          Richard Thompson, Michigan Bar No. P21410
          Kate Oliveri, Michigan Bar No. P79932
          24 Frank Lloyd Wright Drive
          Suite J 3200
          Ann Arbor, Michigan 48106
          (734) 827-2001
          rthompson@thomasmore.org
          koliveri@thomasmore.org

          MILLBERG GORDON STEWART PLLC

          /s/B. Tyler Brooks
          B. Tyler Brooks, Tennessee BPR No. 025291
          1101 Haynes Street, Suite 104
          Raleigh, North Carolina 27604
          (919) 836-0090
          tbrooks@mgsattorneys.com

          *Attorneys for Plaintiffs*